**RYAN G. WELDON**
Assistant U.S. Attorney
U.S. Attorney's Office
P.O. Box 3447
Great Falls, MT  59403
119 First Ave. North, Suite 300
Great Falls, MT  59403
Phone:  (406) 761-7715
FAX:  (406) 453-9973
E-mail:   Ryan.Weldon@usdoj.gov

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### GREAT FALLS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 17-03-GF-BMM** |
| Plaintiff, | |
| vs. | **OFFER OF PROOF** |
| **NATALEE CHRISTINE CRUMLEY,** | |
| Defendant. | |

1

## THE CHARGE

The defendant, NATALEE CHRISTINE CRUMLEY, is charged by Indictment in Count I with Wire Fraud, in violation of 18 U.S.C. § 1343, in Count II with Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1), and in Count III with Engaging in Monetary Transactions in Property Derived From Specified Unlawful Activity, in violation of 18 U.S.C. § 1957.

## PLEA

The defendant, NATALEE CHRISTINE CRUMLEY, will enter a voluntary plea of guilty to the counts in the Indictment.  There is no plea agreement in this case.  The motion for change of plea filed with the Court represents, in the government's view, the most favorable disposition of the case against the defendant.  *See, e.g., Missouri v. Frye*, 132 S. Ct. 1399 (2012).

## ELEMENTS

The defendant will plead guilty because the defendant is in fact guilty of Count I of the Indictment.  In pleading guilty to Count I, the defendant acknowledges that:

> **First**, the defendant knowingly participated in, devised, and intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

> **Second**, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

**Third**, the defendant acted with the intent to defraud, that is, the intent to deceive or cheat; and,

**Fourth**, the defendant used, or caused to be used, a wire communication to carry out or attempt to carry out an essential part of the scheme.

The defendant will plead guilty because the defendant is in fact guilty of Count II of the Indictment. In pleading guilty to Count II, the defendant acknowledges that:

**First**, the defendant knowingly used, without legal authority, a means of identification of another person;

**Second**, the defendant knew that the means of identification belonged to a real person; and,

**Third**, the defendant did so during and in relation to 18 U.S.C. § 1343, wire fraud.

The defendant will plead guilty because the defendant is in fact guilty of Count III of the Indictment. In pleading guilty to Count III, the defendant acknowledges that:

**First**, the defendant knowingly engaged, or attempted to engage, in a monetary transaction;

**Second**, the monetary transaction was of a value greater than $10,000;

**Third**, the monetary transaction involved criminally derived property;

**Fourth**, the criminally derived property was derived from specified unlawful activity;

**Fifth**, the defendant knew that the monetary transaction involved criminally derived property;

**Sixth**, the monetary transaction took place within the United States.

## PENALTY

Count I of the Indictment charges the crime of Wire Fraud, in violation of 18 U.S.C. § 1343. Count I carries up to twenty years imprisonment, a $250,000 fine, and three years of supervised release. Count II of the Indictment charges the crime of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1). Count II carries a mandatory two years imprisonment, in addition to punishment for the underlying felony, a $250,000 fine, and one year of supervised release. Count III of the Indictment charges the crime of Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, in violation of 18 U.S.C. § 1957. Count III carries up to ten years imprisonment, a $250,000 fine, and three years of supervised release.

In addition to restitution, the Indictment includes a Forfeiture Allegation, in violation of 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 21 U.S.C. § 853(p). The Forfeiture Allegation requests a money judgment of $427,816.17.

## ANTICIPATED EVIDENCE

If this case were tried in United States District Court, the United States would prove the following:

Natalee Crumley began employment at Junkermier, Clark, Campanella, Stevens, P.C. ("JCCS") on June 17, 2014. JCCS hired Crumley as a management information accountant (bookkeeper) to provide bookkeeping services to several JCCS clients. During Crumley's employment, she provided bookkeeping services to Anderson Glass Doors and Windows ("Anderson Glass") and Doors & Hardware Unlimited, Inc. ("Doors & Hardware").

In approximately August of 2016, the bank notified the owner of Doors & Hardware about some suspicious activity within the Doors & Hardware checking account. The owner reviewed the accounts because the business appeared to be unexpectedly hemorrhaging money. After reviewing the records, the owner discovered that Crumley was issuing checks to herself. All of the checks issued to Crumley from Doors & Hardware's First Interstate Bank account had the forged signature of the Doors & Hardware owner. Crumley forged the signature, and she was never authorized to do so. Nor was she authorized to receive the money.

Crumley concealed her scheme by manipulating QuickBooks data to hide that she wrote checks to herself. For example, Crumley usually wrote the checks in QuickBooks, which caused them to be classified as "Bill Pmt – Check." Crumley wrote the checks through QuickBooks through the vendor payment system. The vendor most commonly used to conceal the checks to Crumley was "Curries/Essex." Curries/Essex is the largest single vendor of Doors & Hardware.

On August 8, 2016, JCCS questioned Crumley about the embezzlement from Doors & Hardware. Crumley admitted to writing the checks to herself and that she did not have permission to do so. Crumley told JCCS there were "a lot more" and there was "a lot of money" involved. Crumley also said that she took money from Anderson Glass.

Similar to the embezzlement scheme with Doors & Hardware, Crumley also provided bookkeeping services, through her employment at JCCS, to Anderson Glass. The bank also contacted Anderson Glass about a suspicious check that was cashed by Crumley. Anderson Glass verified the suspicious check was forged. Upon seeing this check, the owner of Anderson Glass called Crumley. Crumley did not answer his call, but she stopped by a short time later. The owner of Anderson Glass showed Crumley the suspicious check, and she admitted she forged the owner's signature on the check. Crumley was adamant this was the only check she had forged on the account.

The investigation has identified over 100 checks that Crumley forged while working as a bookkeeper at JCCS. Crumley forged 66 checks from Doors & Hardware, which totaled $307,739.99. She likewise forged 46 checks from Anderson Glass, which totaled $120,076.18. All total, Crumley has embezzled over $420,000 in just over a year timespan. The criminal forfeiture amount in the Indictment is $427,816.17.

After depositing the embezzled and stolen money into her personal bank account, Crumley withdrew over $140,000 in cash. She likewise purchased NCAA Final Four tickets, furniture, clothes, and took trips to Miami, Long Beach, Houston, and Spokane, among many other expenses. When purchasing the NCAA Final Four Tickets, Crumley spent approximately $14,602 on the tickets, which derived from money she embezzled and stole during the above wire fraud scheme.

The Great Falls Police Department interviewed Crumley, and she confessed to embezzling the money from Anderson Glass and Doors & Hardware.

DATED this 14th day of April, 2017.

                        LEIF JOHNSON
                        Acting United States Attorney

                        */s/ Ryan G. Weldon*
                        RYAN G. WELDON
                        Assistant U.S. Attorney